UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENSON ROBENS JEAN-BAPTISTE,<br><br>                                      Plaintiff,<br>v.<br>CALIFORNIA COAST CREDIT UNION,<br>                                      Defendant. | Case No.: 23cv533-LL-VET<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>**[ECF No. 6]** |

      This matter is before the Court on the Motion to Compel Arbitration filed by Defendant California Coast Credit Union (the "Credit Union"). ECF No. 6. Defendant filed a reply supporting its Motion [ECF No. 8] and Plaintiff filed responses in opposition both to the Motion [ECF No. 7] and the reply [ECF No. 9]. As an initial matter, the Court **STRIKES** Plaintiff's opposition to Defendant's reply as a sur-reply filed without leave. *See* Hon. Linda Lopez, Civil Chambers Rules, 3E ("Sur-Replies and Notices of Supplemental Authority"). The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Upon review of the parties' submissions and the applicable law, the Court **GRANTS** the Motion to Compel Arbitration for the reasons set forth below.

## I. BACKGROUND

Plaintiff Mackenson Robens Jean-Baptiste filed a complaint initiating this action on March 24, 2023. ECF No. 1. The complaint alleges that Defendant violated various state and federal statutes by failing to provide required disclosures for several consumer credit transactions between Plaintiff and Defendant. *Id.*

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. On a motion to compel arbitration under the FAA, a court must compel arbitration if: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of the agreement. *Geier v. M-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (per curiam) (internal citation omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## III. DISCUSSION

### A.   A Valid Arbitration Agreement Exists

Challenges to the existence of a contract must be determined by the court prior to ordering arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (2023) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). On the other hand, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun.*, 925

F.2d at 1141 (*quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). Accordingly, a court may find that an agreement to arbitrate exists "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id.*

"When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citing *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019)). Under California law, "[t]he party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature." *Bannister v. Marinidence Opco, LLC*, 279 Cal. Rptr. 3d 112, 113 (Ct. App. 2021) (citing *Espejo v. So. Cal. Permanente Med. Grp.*, 201 Cal. Rptr. 3d 318 (Ct. App. 2016)). However, if the validity of the signature is challenged, the party must "establish by a preponderance of the evidence that the signature was authentic." *Espejo*, 201 Cal. Rptr. 3d at 327-28. "To bear this burden, the arbitration opponent must offer admissible evidence creating a factual dispute as to the authenticity of their signatures." *Iyere v. Wise Auto Grp.*, 303 Cal. Rptr. 3d 835, 842 (Ct. App. 2023).

In this case, Defendant met its initial burden to show that a valid arbitration agreement exists by proffering a Member Services Request ("MSR") form with Plaintiff's apparent handwritten signature [ECF No. 6-5] and a copy of Defendant's current Membership and Account Agreement ("MAA") form which includes an arbitration provision [ECF No. 6-6]. Defendant's Motion is also supported by a Declaration from Chris Atallah, an Assistant Vice President of Defendant's Compliance and Legal department. ECF No. 6-4. Atallah's declaration attests that Defendant's business records show that Plaintiff became a member of on February 4, 2020; signed an MSR at that time, that the MSR states that the signatory agrees to the terms and conditions of the MAA; and that the MAA includes an arbitration provision which states that the signatory agrees to "attempt to informally settle any and all disputes arising out of, affecting, or relating to your accounts, or the products or services the Credit Union has provided, will provide or has offered to provide you, and/or any aspect of your relationship with the Credit Union[.]"

ECR No. 6-4 at 1-3. The signature page of the MSR states that "[b]y signing or otherwise authenticating, I/we agree to the terms and conditions of the Membership and Account Agreement[,] . . . I/we acknowledge receipt of the agreements and disclosures applicable to the accounts and services requested herein." ECF No. 6-5 at 3. Atallah also attests that Defendant's records show that Plaintiff was provided with the MAA and arbitration provision "at the time the account was opened at the Credit Union's El Cajon branch on February 4, 2020," that "Plaintiff took no action to opt out of the Arbitration Provision, so the Effective date of the Arbitration Agreement is March 6, 2020," and that "Plaintiff continues to utilize his Credit Union accounts and . . . accept the benefits of the Credit Union's services" as of April 17, 2023, the date of the declaration. *Id.* ¶¶ 8-10.

In response to Defendant's Motion, Plaintiff summarily argues that: (1) the MSR is a forgery, as he "is not conscious of having any arbitration agreement, interaction, extension of credit, opening of account, nor any business with the defendant dated February 4, 2020 where both parties agreed to"; (2) Defendant "does not have and failed to provide any evidence of ANY, signed arbitration agreement, opened account . . . with the above referenced date"; (3) "[a]ll of the plaintiff's opened accounts/consumer transactions with the defendant are dated March 30, 2020 and April 2nd 2020"; (4) the MSR is one-sided and not signed by Defendant; (5) the MAA "has never been served, provided nor presented to the plaintiff"; (6) the MAA "was never agreed upon;" (7) the MAA "is unconscionable as it is one-sided and it is an adhesion contract;" (8) there was no mutual consent to arbitrate; (9) "Defendant provided no evidence that they even sent or served" the MAA to the plaintiff; (10) "plaintiff never willfully, intentionally, knowingly and consciously agreed to waive his constitutional right . . . to have a jury trial"; and (11) "there was no contract formation that shows where the parties agreed to an arbitration agreement." ECF No. 7 ¶¶ 1-12. Plaintiff declares that he "never offered, signed, provided or agreed to any conscious arbitration agreement between me and CALIFORNIA COAST CREDIT UNION," that he denies "signing any arbitration agreement on February 4, 2020," and that he has "never seen nor presented" and does not "have any knowledge of the defendant's

MEMBERSHIP AGREEMENT AND DISCLOSURES." *Id.* at 5. He further declares that he "is aware that the defendant has no evidence of a contract formation determining whether parties have agreed to submit to arbitration" and that the MAA "has never been disclosed [to him] before, it is unconscionable as it is one-sided and it is an adhesion contract." *Id.* Plaintiff additionally objects to Atallah's declaration in several respects. Namely, that Atallah does not have personal knowledge that the MSR and MAA were agreed-to, signed, and delivered to Plaintiff in some way because Atallah was not employed by Defendant on the date the documents were allegedly signed and provided. *Id.* at 6. Plaintiff also objects to Atallah's characterization of the Credit Union as a non-profit organization.[1] *Id.* Plaintiff did not submit any evidence together with his opposition.

Defendant's reply to Plaintiff's opposition contends that the facts belie Plaintiff's lack of recollection and allegation of forgery, because the evidence supports its assertion that Plaintiff signed the MSR, became a member of the Credit Union, and opened a primary savings account on February 4, 2020. ECF No. 8 at 2-3. Defendant submitted a supplemental declaration by Atallah which states that: (a) Defendant's records show that Plaintiff became a member on February 4, 2020 at the Credit Union's El Cajon branch; (b) the Credit Union's policies and procedures require that prospective new members provide a form of identification; (c) Plaintiff provided his California driver license; (d) the Credit Union's document archive has a scan date of February 4, 2020 for Plaintiff's driver's license; (e) the address on the scanned driver's license matches the address listed on the MSR, was used to transmit monthly statements to Plaintiff; and matches the address on Plaintiff's summons, complaint, and the exhibits attached to Plaintiff's complaint; (f) Plaintiff opened a primary savings against beginning with the numbers 1098 after

---

[1] Atallah's declaration states that "[t]he Credit Union is a member-owned, not-for-profit cooperative and financial institution which provides account and loan services to its members." ECF No. 6-4 at 2.

becoming a member of the Credit Union on February 4, 2020; (g) Plaintiff deposited $50 dollars into that account the same month it was opened; and (h) Plaintiff "continues to utilize his Credit Union accounts and continues to accept the benefits of the Credit Union's services" as of the date of the declaration. ECF No. 8-1 at 1-3. Atallah's declaration included screen captures from Defendant's document image archive showing an "ID Capture" with a date of February 4, 2020 [ECF No. 8-2]; a scanned image of Plaintiff's driver's license showing Plaintiff's handwritten signature and matching address [*id.*]; and a statement for the period of February 4, 2020 through March 31, 2020 which shows a "primary savings" as well as a "2017 Lexus NX" account [ECF No. 8-3]. The included statement shows that $50 was deposited into the primary savings account on February 4, 2020. *Id.*

In this case, Plaintiff has not offered any admissible evidence creating a dispute as to the authenticity of his physical signature on the agreement proffered by Defendant.[2] Rather than disputing that the handwritten signature is inauthentic or forged, Plaintiff argues that he "is not conscious of having any arbitration agreement . . . dated February 4, 2020 where both parties agreed to[,]" that the MSR and disclosures have "never been served, provided nor presented to the plaintiff, was never agreed upon, is unconscionable as it is one-sided and it is an adhesion contract," and that the MSR "was not signed and served by any officer, servants nor employee of the Defendant." ECF No. 7 ¶¶ 1-6. Even if Plaintiff's bare assertions were sufficient to shift the burden back to Defendant, Atallah's declaration as a custodian of records for Defendant is sufficient to rebut Plaintiff's challenge to the authenticity of the signature. *Gamboa v. Northeast Community Clinic*, 286 Cal. Rptr. 3d 891, 901 (Ct. App. 2021); *see also Iyere*, 303 Cal. Rptr. 3d at 845 ("the custodian of a document need not have been present or employed when the document was

---

[2] Plaintiff's stricken sur-reply [ECF No. 9] does not offer any admissible evidence regarding the authenticity of Plaintiff's signature on the MSR and would not change the Court's finding.

created or signed to authenticate a document in a company's files."). Furthermore, no counter-signature by the Defendant was necessary for mutual assent, as the Defendant's conduct in preparing and offering the MSR and arbitration agreement to Plaintiff was conduct sufficient to manifest its assent. *See Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 159 (Ct. App. 2015) ("the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement.").

As the court stated in *Iyere*, "there is no conflict between their having signed a document on which their handwritten signature appears, and [multiple] years later, being unable to recall doing so." 303 Cal. Rptr. 3d at 843. Absent any evidence that Plaintiff's purported signature was inauthentic, there is no evidence that Plaintiff "did not in fact sign the agreement." *Id.* As such, the Court has no independent basis to find that a contract was not formed. *Id.* at 845 ("If a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed."). Accordingly, the Court finds that the arbitration agreement proffered by Defendant is authentic.[3] *See Am. Fed'n of Musicians of the U.S. v. Paramount Pictures Corp.*, 903 F.3d 968, (9th Cir. 2018) (citing Fed. R. Evid. 901(a)).

### B.  Unconscionability

California law provides both that "a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made'" and that "the party opposing arbitration must demonstrate procedural and substantive

---

[3] The Court also notes that, although Atallah's declaration as a custodian of records for Defendant is sufficient to authenticate Plaintiff's signature in the absence of other evidence proffered by Plaintiff, the Court's visual inspection reveals that the signature on the MSR [ECF No. 6-5 at 3] is strikingly similar to the signature present on Plaintiff's driver's license [ECF No. 8-2].

unconscionability[.]" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). And "[t]he prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 61 Fal. 4th 899, 910 (Cal. 2015) (internal quotations and citations omitted). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, and substantive unconscionability focuses on overly harsh or one-sided results. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) (citing *A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Ct. App. 1982)). "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez*, 61 Cal. 4th at 911 (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (Cal. 2013)).

Challenges to arbitration agreements may take the form of a challenge to the entire contract as a whole, or specifically toward the validity of the arbitration provision. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). In this case, Plaintiff challenges the entire contract, arguing that the MAA "is unconscionable as it is one-sided and it is an adhesion contract." ECF No. 7 at 2. However, aside from Plaintiff's separate arguments that there was an absence of consent or mutual assent—as the Court addressed in examining whether a valid agreement to arbitrate exists—, the only argument put forth regarding unconscionability is that Plaintiff was not provided with the MAA and that it "should not be enforced due to false representation, violation of applicable law and duress." *Id.* Plaintiff cannot meet his burden to show that the MAA is unconscionable through bare and conclusory allegations devoid of fact. *See Vance v. Villa Park Mobilehome Estates*, 42 Cal. Rptr. 2d 723, 729-730 (Ct. App. 1995). As such, the Court finds that Plaintiff's unconscionability argument fails.

\\\

\\\

\\\

### IV.   CONCLUSION

In accordance with the above, the Court hereby **ORDERS** that:

1. Plaintiff's Opposition to Defendant's Reply [ECF No. 9] is **STRICKEN**;

2. Defendant's Motion to Compel Arbitration [ECF No. 6] is **GRANTED**;

3. The Court **STAYS** this action pending the outcome of arbitration proceedings;

4. The parties are **DIRECTED** to file a joint report on **May 6, 2024**, and every 90 days thereafter, advising the Court of the status of arbitration proceedings; and

5. Upon the completion of arbitration proceedings, the parties **SHALL FILE** a joint report, advising the Court of the outcome of the arbitration and requesting that the case be dismissed or reopened, no later than fourteen days after the conclusion of arbitration proceedings.

**IT IS SO ORDERED**.

Dated:  February 6, 2024

Honorable Linda Lopez
United States District Judge